# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT LENOIS, on behalf of himself and all other similarly situated stockholders of ERIN ENERGY CORPORATION, and derivatively on behalf of ERIN ENERGY CORPORATION,<br><br>     Plaintiff,<br><br>v.<br><br>KASE LUKMAN LAWAL, LEE P. BROWN, WILLIAM J. CAMPBELL, J. KENT FRIEDMAN, JOHN HOFMEISTER, IRA WAYNE MCCONNELL, HAZEL R. O'LEARY, and CAMAC ENERGY HOLDINGS LIMITED,<br><br>     Defendants,<br><br>  and<br><br>ERIN ENERGY CORPORATION,<br><br>     Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 11963-VCF |

## MEMORANDUM OPINION

Date Submitted: September 30, 2020
Date Decided: December 31, 2020

Michael J. Barry, Rebecca Musarra, GRANT & EISENHOFER, P.A., Wilmington, Delaware; Gordon Z. Novod, GRANT & EISENHOFER, P.A., New York, New York; Peter B. Andrews, Craig J. Springer, Jessica Zeldin, David M. Sborz, ANDREWS & SPRINGER LLC, Wilmington, Delaware; Jeremy Friedman, Spencer Oster, David Tejtel, FRIEDMAN OSTER & TEJTEL PLLC, New York, New York; *Attorneys for Plaintiff Robert Lenois and Ronald J. Sommers, Chapter 7 Trustee.*

Myron T. Steele, Matthew F. Davis, Jaclyn C. Levy, POTTER, ANDERSON & CORROON LLP, Wilmington, Delaware; David T. Moran, Christopher R. Bankler, JACKSON WALKER L.L.P., Dallas, Texas; *Attorneys for Defendants Kase Lukman Lawal and CAMAC Energy Holdings Limited.*

David J. Teklits, Kevin M. Coen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Mark Oakes and Ryan Meltzer, NORTON ROSE FULBRIGHT US LLP, Austin, Texas; John Byron, NORTON ROSE FULBRIGHT US LLP, Houston, Texas; *Attorneys for Defendants Lee P. Brown, William J. Campbell, J. Kent Friedman, and Nominal Defendant Erin Energy Corporation.*

Srinivas M. Raju, Robert L. Burns, Matthew D. Perri, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Greg Waller, HUNTON ANDREWS KURTH L.L.P., Houston, Texas; *Attorneys for Defendants John Hofmeister, Ira Wayne McConnell, and Hazel O'Leary.*

**FIORAVANTI, Vice Chancellor**

2

On November 7, 2017, this court issued a Memorandum Opinion dismissing Plaintiff Robert Lenois's derivative claims on behalf of Erin Energy Corporation ("Erin" or the "Company") against certain of Erin's directors and its controlling stockholders ("Defendants") for failure to plead demand futility (the "Memorandum Opinion"). Lenois appealed the dismissal. While the appeal was pending, Erin filed for bankruptcy, initially under Chapter 11, and later converted into a liquidation under Chapter 7. The bankruptcy resulted in an automatic stay of the appeal.

During the pendency of the appeal, Lenois and his counsel convinced Erin's bankruptcy trustee, Ronald J. Sommers (the "Trustee"), that the claims in this action have merit and should be pursued. The Trustee recognized, however, that due to the passage of time, asserting the claims in a separate action could give rise to a defense of laches. Thus, the Trustee retained Lenois's counsel and filed a motion in this action to be substituted for Lenois as plaintiff. At the same time, the Trustee and Lenois ("Movants") also filed a motion for relief from judgment under Court of Chancery Rule 60(b) (the "Motion for Relief"). After this court questioned whether it had jurisdiction to consider the motions due to the pendency of the appeal, the Trustee filed motions in the Delaware Supreme Court to vacate the Memorandum Opinion and substitute the Trustee for the Company as the real party in interest to pursue the action on Erin's behalf. Defendants opposed the motions and moved to dismiss the appeal as moot. The Supreme Court dismissed the appeal as moot,

denied the Trustee's motions for substitution and vacatur, and remanded to this court for consideration of the previously filed motion for substitution and Motion for Relief.

Following dismissal of the appeal, the Trustee filed an Amended Motion for Substitution and Realignment (the "Motion to Substitute" and, along with the Motion for Relief, the "Motions") seeking to substitute the Trustee for the Company, instead of Lenois, and to realign the Trustee as plaintiff so that Erin may directly pursue in this action the claims that Lenois had previously asserted. This opinion resolves the Motions.

## I. BACKGROUND

The facts recited in this opinion are drawn from Plaintiff Lenois's Complaint (the "Complaint" or "Compl.") the Supplement to the Complaint, the Memorandum Opinion, and the parties' submissions in support of and in opposition to the Motions. This opinion summarizes the allegations of the Complaint and the Memorandum Opinion to the extent necessary to address the pending Motions.

### A. Erin and the Challenged Transactions

Erin is an oil and gas exploration company. Kase Lukman Lawal was the Company's Chairman and Chief Executive Officer.[1] At the time of the challenged transactions, Lawal is alleged to have been the Company's controlling stockholder.

---

[1] Compl. ¶ 11.

4

Lawal and his family owned a majority of CAMAC International Limited ("CIL"), which indirectly owns 100% of Defendant CAMAC Energy Holdings Limited ("CEHL"). Lawal and CEHL owned 58.86% of the Company's outstanding shares prior to the transactions challenged in Lenois's Complaint.

In June 2013, Public Investment Corporation Limited ("PIC"), a quasi-public South African pension fund manager, and Lawal, on behalf of Allied Energy Plc ("Allied"), a wholly owned subsidiary of CEHL, negotiated a transaction through which PIC would invest $300 million in the Company in exchange for a 30% ownership stake in Erin. Erin would then transfer the money invested by PIC and additional Erin stock to Allied in exchange for certain oil assets held by Allied (the "Assets").

On June 14, 2013, Allied and PIC presented the proposed transactions to the Erin board of directors (the "Board"). On June 17, 2013, the Board formed a Special Committee consisting of Defendants John Hofmeister, Ira Wayne McConnell, and Hazel R. O'Leary to consider and negotiate the proposal.

On November 18, 2013, after five months of negotiations with Lawal and Allied,[2] the Special Committee approved and recommended to the Board a series of related transactions with PIC and Allied (the "Transactions"). The Transactions

---

[2] The specifics of the Special Committee negotiation process are not material for purposes of the pending Motions.

5

provided for: (1) PIC to invest $270 million in Erin in exchange for approximately 377 million shares of Erin; (2) Erin to pay $170 million in cash and provide a $50 million convertible subordinated note to Allied; and (3) Erin to issue additional stock and a stock dividend, ultimately resulting in post-closing Erin ownership of approximately 30% for PIC, 60% for Allied/CEHL, and 13% for other stockholders.[3] The Transactions also provided that Allied would fund the drilling costs of a particular well (with Erin to bear the costs of completion for the well) and that certain contract rights would be terminated in exchange for Erin's agreement to make two $25 million payments to Allied.[4] The Board approved the Transactions, with Lawal and Defendant Lee P. Brown recusing themselves.

On January 15, 2014, Erin filed a proxy statement with the United States Securities and Exchange Commission (the "SEC") recommending that Erin stockholders approve certain proposals necessary to effectuate the Transactions (the "Proxy"). On February 13, 2014, Erin held a special meeting of stockholders to vote on a Transfer Agreement, a Share Purchase Agreement, and an amendment to the Company's certificate of incorporation.[5] The proposals were subject to approval by

---

[3] Compl. ¶ 85.

[4] *Id.*

[5] Memorandum Opinion at 24.

6

a majority of the minority of stockholders. Each of the proposals received the requisite stockholder approvals, and the Transactions closed about a week later.[6]

## B.    The Complaint

On July 30, 2015, nearly a year-and-a-half after the Transactions closed, Lenois made a stockholder demand to inspect Erin's books and records pursuant to 8 *Del. C.* § 220. Counsel for Lenois and Erin negotiated and ultimately agreed upon the scope of the production in response to the demand.[7] Erin produced minutes and presentations of Board meetings and other records specifically requested by Lenois. Lenois did not request any version of the contracts related to the Transactions or any attachments to the contracts.[8]

On February 5, 2016, Lenois filed a Complaint against Defendants asserting direct claims on behalf of a class of Erin stockholders and derivative claims on behalf of the Company. The Complaint alleged that certain of the Company's directors (the "Director Defendants"), Lawal, and CEHL breached their fiduciary duties by approving the Transactions. The Complaint contained four counts. Counts I and II were styled as derivative claims: Count I asserted a derivative claim for breach of fiduciary duty against Lawal and CEHL as the Company's controlling stockholders,

---

[6] *Id.* at 24–25.

[7] Dkt. 118, Affidavit of Mark Oakes ¶¶ 3–9 ("Oakes Aff.").

[8] *Id.* ¶¶ 8–10.

and Count II asserted a derivative claim for breach of fiduciary duty against the Company's directors for permitting Lawal to steer the transaction process. Counts III and IV were styled as class action claims: Count III asserted a direct claim for breach of fiduciary duty against the Company's directors and Count IV asserted a direct claim against Lawal as a controlling stockholder for aiding and abetting the other directors' breaches of fiduciary duty.[9]

The Complaint alleged that the Transactions were subject to and could not withstand entire fairness review because they were transactions between the Company and its controlling stockholder.[10] The Complaint branded the Special Committee process as "fatally flawed,"[11] accusing the Special Committee of relying on conflicted management,[12] lacking time to properly consider the complex transactions presented,[13] being misled and threatened by Lawal, and not being fully informed.[14]

One allegation regarding the Special Committee is central to the pending Motions. The Proxy represented that Allied had acquired the Assets in 2012 for

---

[9] Compl. ¶¶ 112–139.

[10] *Id.* ¶¶ 108–111.

[11] *Id.* ¶¶ 4, 106.

[12] *Id.* ¶¶ 39–48.

[13] *Id.* ¶ 46.

[14] *See, e.g., id.* ¶¶ 35, 54, 68, 72.

"$250 million in cash subject to certain adjustments."[15]  On April 7, 2017, Lenois moved to supplement his Complaint with new allegations based on information obtained through a recent publicly filed question-and-answer session at a stockholder meeting of Eni, S.p.A. ("Eni"), the parent company of the original owner of the Assets, Nigerian Agip Exploration Limited ("NAE").[16]  In that question-and-answer session, Eni disclosed that Allied only paid NAE $100 million of the $250 million owed for the Assets, with the remainder "the subject of recovery by means of a legal action."[17]  Based upon that newly obtained information, Lenois alleged the Special Committee acted in bad faith by knowingly disclosing that Allied acquired the Assets for "$250 million in cash subject to certain adjustments."[18]  On May 23, 2017, the court granted Lenois's motion to supplement the Complaint because Lenois had "no reasonable way . . . to ascertain the information" in the question-and-answer session until the disclosure of the question-and-answer session.[19]

## C.  The Memorandum Opinion

In the Memorandum Opinion dated November 7, 2017, the court granted Defendants' motions to dismiss.  As to the derivative claims, the court determined

---

[15] *See id.* ¶ 31; Proxy at 21.

[16] Dkt. 62.

[17] *Id.* Ex. A ¶ 3.

[18] Proxy at 21.

[19] Dkt. 74.

9

that the Complaint was "replete with allegations of bad faith conduct against Lawal," but concluded the Complaint and documents incorporated by reference reflected a Special Committee that "retained reputable, independent legal and financial advisors, resisted attempts to rush the process, pushed back on numerous deal terms, and obtained materially better terms."[20] Thus, the court held that Lenois failed to plead demand was futile because he failed to show that a "majority of the board face[d] a substantial likelihood of liability for non-exculpated claims."[21] The court further held that Lenois's direct claims for breach of fiduciary duty arising from allegedly materially false disclosures failed because the alleged injury was to the Company.[22]

On November 20, 2017, Plaintiff filed a notice of appeal to the Supreme Court.

### D. Erin Enters Bankruptcy

On January 31, 2018, the Nigerian military landed on oil platforms leased by Erin Petroleum Nigeria, Ltd. ("EPNL") and seized the Assets (the "Seizure").[23] The Nigerian authorities acted pursuant to a final judgment in an arbitration proceeding (the "Arbitration") which found that Allied and CIL failed to pay the agreed-upon

---

[20] Memorandum Opinion at 3–4.

[21] *Id.* at 5–6 (citing *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984)).

[22] Memorandum Opinion at 6.

[23] Mot. for Relief ¶ 2.

purchase price of the Assets acquired from NAE in 2012.[24] The Seizure forced Erin to cease operations, and Erin filed for bankruptcy on April 25, 2018.[25] Erin notified the Supreme Court of the bankruptcy, and on April 27, 2018, the Supreme Court informed the parties that the appeal would be stayed as a result of the bankruptcy.[26]

On April 24, 2018, Erin filed with the SEC a Form 8-K containing a description of the Seizure (the "April 2018 8-K").[27] In the April 2018 8-K, Erin disclosed that the Seizure resulted from a Nigerian court order enforcing a "Final Award" by the London Court of International Arbitration (the "LCIA").[28] The April 2018 8-K disclosed that the Arbitration was denominated LCIA Arbitration No. 132498 and that the Arbitration began in 2016. Based on the LCIA arbitration number disclosed in the April 2018 8-K, Lenois and his counsel ascertained that the arbitration began in 2013, rather than 2016, as the April 2018 8-K stated.[29]

Following the public disclosure in the April 2018 8-K, Lenois investigated the Transfer Agreement further. Lenois and his counsel found a reference in the Transfer Agreement to "NAE Claims" which were "described on Allied Disclosure

---

[24] *Id.*

[25] *Id.*

[26] No. 482, 2017, Dkt. 40.

[27] Mot. for Relief ¶ 8.

[28] *Id.*

[29] *Id.* ¶ 9.

11

Schedule 4.5."[30]  Through the Trustee, Lenois obtained a copy of the Transfer

Agreement containing Schedule 4.5, which contains the following disclosure:

> On September 18, 2013, [NAE] filed its request with the LCIA in London for arbitration (Arbitration No. 132498) against [Allied and CIL]. The claim against Allied is a debt claim, in respect of allegedly unpaid debts under the Sale and Purchase Agreement dated December 20, 2011, as amended, under which Allied purchased [the Assets] (the "NAE SPA"). The debt claim relates to payments of Adjustments (as defined in the NAE SPA) of the purchase price under the NAE SPA and costs arising from the agreed Oyo 5 well production log and gas shut-off intervention program . . . . The amounts claimed by NAE in relation to the Adjustments, as at [sic] 9 September 2013, were $52,263,995.54 . . . .[31]

According to Movants, a transcript of the Arbitration proceeding filed in

Erin's bankruptcy proceeding in May 2018 revealed that Allied was to pay NAE an

initial $100 million for the Assets, with the remaining $150 million payable in three

$50 million installments.[32]  The transcript of the Arbitration proceeding indicates

that Allied did not pay any of the installments.[33]  Based on the inclusion of the NAE

Claims in the Transfer Agreement, Movants contend that the Director Defendants

---

[30] *Id.* ¶ 23.

[31] Transfer Agreement Schedule 4.5.  The Transfer Agreement and Schedule 4.5 thereto are contained in Exhibit 9 to the Motion for Relief.

[32] Mot. for Relief ¶ 26.

[33] *Id.* Ex. 10.

knew that Allied "had not paid the agreed upon purchase price" of $250 million when the Director Defendants approved the Transactions.[34]

On July 12, 2018, the United States Bankruptcy Court for the Southern District of Texas converted Erin's bankruptcy into a Chapter 7 case and appointed Sommers as Erin's Trustee.

### E.    Procedural History

On July 11, 2019, Lenois and the Trustee filed the Motion for Relief in this court. The Trustee also filed a Motion for Substitution to be substituted for Lenois as the plaintiff in this action (the "Original Motion for Substitution"). The parties briefed those motions, and on March 3, 2020, the court heard oral argument.[35] At oral argument, the court requested supplemental briefing on whether this court had jurisdiction to consider the pending motions given the pendency of Lenois's appeal.

On March 17, 2020, the Trustee filed in the Supreme Court a Motion to Vacate Dismissal and Remand. In the Motion to Vacate Dismissal and Remand, the Trustee requested that the Supreme Court vacate this court's order dismissing the derivative claims and to remand the action for further proceedings. The Trustee also filed a Motion to Substitute Party and Realign Trustee as Plaintiff, seeking to substitute the Trustee for Erin as the real party in interest and to realign the Trustee as a plaintiff

---

[34] Mot. for Relief ¶ 25.

[35] Dkt. 141 (the "First Oral Arg. Tr.").

13

to pursue directly in this action the claims that Lenois had previously asserted derivatively.

Defendants opposed the motion to vacate the dismissal and the motion permitting the Trustee to substitute as the plaintiff in this action. Defendants maintained that Lenois and the Trustee lacked standing to pursue the appeal, that the motion to vacate should be denied, that the Trustee should not be allowed to substitute for Erin to pursue claims directly after having sought to substitute for Lenois in this court, and that the appeal was moot.

On May 18, 2020, the Supreme Court dismissed the appeal as moot and remanded the action to this court for further proceedings consistent with the Supreme Court's Order (the "Remand Order").[36] In so holding, the Supreme Court "decline[d] to order vacatur" as requested by the Trustee, explaining:

> [T]he issue of whether the plaintiff-stockholder was excused from making demand in order to bring derivative fiduciary-duty claims does not determine the Trustee's right to bring those fiduciary-duty claims. Rather the Trustee's right to proceed will more appropriately be determined by the Court of Chancery in the first instance, in the context of the motions that are pending before that court, including the motion for relief from judgment.[37]

---

[36] No. 482, 2017, Dkt. 59.

[37] *Id.* (citing *Pepper v. Litton*, 308 U.S. 295, 307 (1939), and *Police & Fire Ret. Sys. of City of Detroit v. Callen*, 2012 WL 1594881, at *2 (Del. May 7, 2012)).

On May 20, 2020, this court permitted the parties to file supplemental submissions to address the pending motions in light of the Remand Order. Later the same day, the Trustee filed the Motion to Substitute. The Motion to Substitute seeks to substitute the Trustee for Erin as the real party in interest and to realign the Trustee as the plaintiff to pursue directly in this action the claims previously asserted derivatively on behalf of Erin.[38]

After briefing on the Motion for Relief and the Motion to Substitute, the court heard oral argument on August 27, 2020.[39] On September 30, 2020, the Trustee filed a supplemental submission in support of the Motion to Substitute.

## II. ANALYSIS

Movants have filed two motions: (1) to substitute the Trustee for the Company as a party and then realign the Trustee as plaintiff and (2) for relief from judgment under Court of Chancery Rule 60(b)(2), (3), and (6). At oral argument, Movants' counsel acknowledged that, for the Trustee to take over the derivative claims and to litigate them in this action, they need to prevail on the Rule 60(b) motion.[40] Movants have not argued that the Trustee can prosecute Lenois's claims

---

[38] The Motion to Substitute differs from the Original Motion for Substitution because the Trustee is seeking to substitute itself for Erin rather than Lenois.

[39] Dkt. 155 (the "Second Oral Arg. Tr.").

[40] *See* Second Oral Arg. Tr. 20 ("THE COURT: You have to get past Rule 60(b) in order to take over the claims in this action. Right? MR. TEJTEL: Yes, Your Honor. Yes, Rule 60(b) would need to be -- we would need relief under Rule 60(b) to proceed, most likely.").

in this action if the Memorandum Opinion is not vacated. The Remand Order also indicates that the Trustee's ability to proceed is contingent upon the Motion for Relief: "[T]he Trustee's right to proceed will more appropriately be determined by the Court of Chancery in the first instance, in the context of the motions that are pending before that court, including the motion for relief from judgment." Remand Order ¶ 5. Accordingly, this opinion first addresses the Motion for Relief and then considers the Motion to Substitute.

## A. The Motion for Relief

Court of Chancery Rule 60(b) states, "[o]n motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding." Ct. Ch. R. 60(b). Rule 60(b) lists six potential grounds for relief. *Id.* The Motion for Relief seeks to vacate the order of dismissal based upon three of them: "newly discovered evidence," (Rule 60(b)(2)) "fraud," (*id.* at 60(b)(3)); or "any other reason justifying relief from the operation of the judgment" (*id.* at 60(b)(6)).

In determining whether to grant a motion under Court of Chancery Rule 60(b), the Court considers Rule 60(b)'s two purposes: "[t]he first is ensuring the integrity of the judicial process and the second, countervailing, consideration is the finality of judgments." *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 634–35 (Del. 2001). "Because of the significant interest in preserving the finality of

16

judgments, Rule 60(b) motions are not to be taken lightly or easily granted." *Id.* at 635. "The determination whether to grant a motion for relief pursuant to Rule 60(b) rests in the sound discretion of the trial court." *Joseph v. Shell Oil Co.*, 1985 WL 21146, at *1 (Del. Ch. June 6, 1985); *Grobow v. Perot*, 1990 WL 146, at *5 (Del. Ch. Jan. 3, 1990) (same). "Rule 60(b) is a remedy for circumstances in which new evidence shows that an injustice is clearly threatened." *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, 1996 WL 757274, at *4 (Del. Ch. Dec. 20, 1996).

### 1. Court of Chancery Rule 60(b)(2)

Under Court of Chancery Rule 60(b)(2), a court may provide relief from a final judgment on the basis of "newly discovered evidence." Ct. Ch. R. 60(b)(2). To prevail under this subsection of Rule 60(b), the movant must show "(1) the newly discovered evidence has come to his knowledge since the judgment; (2) that it could not, in the exercise of reasonable diligence, have been discovered for use before the judgment; (3) that it is so material and relevant that it will probably change the result; (4) that it is not merely cumulative or impeaching in character; and (5) that it is reasonably possible that the evidence will be produced at the trial." *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2018 WL 1254958, at *1 (Del. Ch. Mar. 12, 2018) (internal quotations and bracketing omitted). To qualify as "newly discovered evidence" for purposes of Rule 60(b)(2), the evidence must "have been

17

in existence and hidden at the time of judgment." *Bachtle v. Bachtle*, 494 A.2d 1253, 1255–56 (Del. 1985).

The "newly discovered evidence" that Movants offer as the reason to vacate the court's dismissal order is Schedule 4.5 to the Transfer Agreement, which discloses the existence of the Arbitration. Movants argue that Schedule 4.5 to the Transfer Agreement was neither publicly filed nor produced in response to Lenois's demand for books and records and that it reflects that the entities which sold the Assets to Allied (which then sold the Assets to the Company) were subject to the Arbitration. According to Movants, Schedule 4.5 reveals that the Director Defendants must have known that the disclosure in the Proxy that Allied had acquired the Assets in 2012 for "$250 million in cash subject to certain adjustments" was false. Movants argue that the existence and nature of the Arbitration was "so material and relevant" that it would have changed the result of the Memorandum Opinion. In particular, Movants argue that the Memorandum Opinion stated that "Plaintiff likely would have very serious claims of bad faith against Director Defendants" if the "Special Committee did know that Lawal Allied did not actually 'pay $250 million in cash' for the Assets and intentionally misled stockholders in the Proxy." Mot. for Relief ¶¶ 17, 32–33.

For the following reasons, even assuming that disclosure of the Arbitration would have been sufficiently material to potentially alter the result of the

18

Memorandum Opinion, the existence of the Arbitration was not "newly discovered" evidence to the Trustee, and Lenois has failed to demonstrate that he could not have discovered the existence of the Arbitration had he exercised "reasonable diligence." *Corbat*, 2018 WL 1254958, at *1.

> **a.** **The Trustee Stands in the Shoes of Erin and the Arbitration Is Not "Newly Discovered Evidence" By Erin.**

The court will not grant relief from a final judgment under Court of Chancery Rule 60(b)(2) if the "evidence was in the possession of the party seeking to introduce it as 'newly discovered.'" *Wimbledon Fund LP v. SV Special Situations LP*, 2011 WL 378827, at *5 (Del. Ch. Feb. 4, 2011). Schedule 4.5 was within Erin's possession,[41] and Erin's knowledge is imputed to the Trustee. *See In re IH 1, Inc. Miller v. Kirkland & Ellis LLP*, 2016 WL 6394296, at *41 (D. Del. Sept. 28, 2016) ("[A]s Indalex's trustee, plaintiff stands in the shoes of the company and Indalex's knowledge . . . is imputed to plaintiff."). Indeed, "[b]ecause the trustee stands in the shoes of the debtor when bringing these claims, the trustee is 'subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'" *Id.* at *13 (D. Del. Sept. 28, 2016) (quoting *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 356 (3d Cir. 2001)).

---

[41] Mot. for Relief ¶ 24 ("On May 30, 2019, Trustee was able to produce an execution copy of the Transfer Agreement, complete with Schedule 4.5.").

Because Schedule 4.5 was not "newly discovered" by Erin and the Trustee, the Trustee's request for relief from judgment pursuant to Rule 60(b)(2) is denied.

To avoid the imputation of the Company's knowledge to the Trustee, Movants urge the court to treat Schedule 4.5 as "newly discovered evidence" for equitable reasons. *See* Reply in Support of Mot. for Relief at 6 n.16 (arguing that imputing knowledge to the Trustee would "foreclose trustees from ever bringing newly-discovered claims concealed by faithless fiduciaries"); Second Oral Arg. Tr. 35–36 (same). Movants cite no case law in which a court has treated a bankruptcy trustee's knowledge as distinct from the knowledge of the bankrupt entity. In addition, there is no equitable reason to treat Erin's knowledge as distinct from that of the Trustee because, for the reasons next discussed, I am not persuaded that Lenois exercised reasonable diligence warranting relief from the Memorandum Opinion or that the nondisclosure of Schedule 4.5 was the result of fraud.[42]

---

[42] It is questionable whether Lenois has standing to pursue the Motion for Relief. *See Police & Fire Ret. Sys. of City of Detroit v. Callen*, 2012 WL 1594881, at \*2 (Del. May 4, 2012) ("We agree that Ambac's bankruptcy filing, by operation of law, divested [the stockholder-plaintiff] of standing to pursue Ambac's claims derivatively, unless and until [the stockholder-plaintiff] is authorized to do so by the Bankruptcy Court.") (footnote omitted) (cited in Remand Order ¶ 5 n.5). The Trustee, however, appears to possess standing to pursue the Motion for Relief. *See* Ct. Ch. R. 60(b) (permitting the Court of Chancery to relieve a party or its legal representative from a final judgment); *see also Heyman v. M.L. Mktg. Co.*, 116 F.3d 91, 95 (4th Cir. 1997) (analyzing analogous Federal Rule of Civil Procedure 60(b) and noting that a bankruptcy trustee is a legal representative for purposes of Rule 60(b)).

**b. Lenois Could Have Discovered the Existence of the Arbitration Before the Memorandum Opinion Had He Exercised Reasonable Diligence.**

Movants' Rule 60(b)(2) motion is denied because the purportedly "newly discovered evidence" was contained in a schedule attached to the Transfer Agreement and could have been discovered before the court issued the Memorandum Opinion if Lenois had exercised reasonable diligence.

Erin filed the Transfer Agreement with the SEC as an exhibit to Erin's Form 8-K announcing the Transactions. In Section 1.2 of the Transfer Agreement, Allied represented and warranted that the interests transferred through the Transfer Agreement were free of "any material adverse contractual obligations," subject to certain exceptions. Transfer Agreement § 1.2. However, Allied retained all rights to "any claim or counterclaim that they may have asserted or may be entitled to assert against NAE . . . in any action, including the Actions described in Allied Disclosure Schedule 4.5 (collectively, the 'NAE Claims')." *Id.* Schedule 4.5 is also referenced in Section 4.5 of the Transfer Agreement, which is a representation and warranty by Allied regarding pending or threatened litigation against Allied and its affiliates. Section 4.5 states that Schedule 4.5 contains a list of actions pending or threatened against Allied that relate to the interests transferred through the Transfer Agreement. Transfer Agreement § 4.5. The Transfer Agreement references litigation between NAE and Allied disclosed at Schedule 4.5 no less than four times. *Id.* §§ 1.2, 4.5;

21

*see also id.* §§ 6.1(b)(vi) (referencing "current actions between the Allied Parties and NAE or the NAE Claims, all of which are disclosed on Allied Disclosure Schedule 4.5"), 10.2 (referencing actions "whether pending or threatened, described in Allied Disclosure Schedule 4.5").

These sections of the Transaction Agreement informed Lenois there was litigation between Allied and NAE. The Transaction Agreement also informed Lenois that the litigation was disclosed at Schedule 4.5. Lenois contends, however, that investigating potential litigation between Allied and NAE disclosed in the Transfer Agreement would not have constituted reasonable diligence because the Transfer Agreement only disclosed affirmative claims by Allied against NAE, and not claims by NAE against Allied. *See* Reply in Support of Mot. for Relief ¶ 9. In support of this argument, Lenois cites the definition of "NAE Claims," which is "any claim or counterclaim that [Allied or Lawal] may have asserted or may be entitled to assert against NAE." *See id.* (citing Transfer Agreement § 1.2). According to Lenois, he should not be faulted "for not divining the relevance of concealed materials and suing to force their production." Reply in Support of Mot. for Relief ¶ 21.

Lenois's justification is not tenable because the Transfer Agreement indicates that Schedule 4.5 could contain disclosures regarding claims by NAE against Allied, in addition to claims by Allied against NAE. Section 6.1(b)(vi) references "current

22

actions between the Allied Parties and NAE or the NAE Claims, all of which are disclosed on Allied Disclosure Schedule 4.5." Transfer Agreement § 6.1(b)(vi). The reference to "current" actions indicates that there were extant actions between Allied and NAE, which could have (and did) include actions by NAE against Allied. In addition, the definition of "NAE Claims" at Section 1.2 of the Transfer Agreement references potential "counterclaims" by Allied against NAE. Investigating Allied's counterclaims would have revealed the existence of the Arbitration because Allied asserted a counterclaim against NAE in the Arbitration that was disclosed in Schedule 4.5. Transfer Agreement Schedule 4.5 ("Allied has asserted a counterclaim that, in breach of Article 7.1 of the PSC, NAE failed to carry out the approved Work Programmes . . . and [is] seeking damages occasioned by NAE's breaches, which are currently expected to considerably exceed US$500 million."). Even if the Transfer Agreement only purported to disclose claims by Allied against NAE, any litigation between NAE or Allied—regardless of who initiated the litigation as a procedural matter—should have been investigated in the exercise of "reasonable diligence" because any such action could have related to the Assets. In short, Lenois could not reasonably have concluded that Schedule 4.5 only disclosed claims by Allied against NAE that were unrelated to the Assets.

Lenois could have obtained Schedule 4.5 had he pursued it from Erin in his books and records demand. It is an attachment to a key transaction contract. If

23

Lenois had requested and pursued Schedule 4.5 to the Transfer Agreement through his books and records demand, Erin would have produced it, or would have been required to produce it. *See KT4 Partners LLC v. Palantir Techs., Inc.*, 203 A.3d 738, 751–52 (Del. 2019) ("[A] stockholder with a proper purpose 'should be given access to all of the documents in the corporation's possession, custody or control, that are necessary to satisfy that proper purpose.'") (quoting *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 114–15 (Del. 2002)). Lenois, however, never specifically requested Schedule 4.5 (or any other schedule to the Transfer Agreement).[43] Lenois thus chose to proceed without investigating the Transfer Agreement's disclosures regarding litigation between Allied and NAE, even after supplementing his Complaint to allege that Allied paid NAE $100 million of the $250 million owed for the Assets, with the remainder "the subject of recovery by means of a legal action."[44]

Lenois's choice to not investigate litigation between Allied and NAE does not warrant relief under Rule 60(b)(2). To be sure, Lenois's motion would have stood on marginally better ground if he had at least pressed for the production of Schedule

---

[43] Oakes Aff. ¶ 10 (counsel for Erin prior to the bankruptcy attesting that, "[a]t no point following the initial 220 Demand, and through dismissal of this lawsuit, did counsel for Mr. Lenois request that Erin Energy produce any version of the transaction documents, including any schedules to the Transfer Agreement."). Lenois did not dispute this statement.

[44] *See* Dkt. 26.

24

4.5 and been rebuffed, or if the Company represented that it was irrelevant to the stated purposes of the demand and that Lenois then relied upon that representation. Under the circumstances here, however, Lenois had "ample opportunity" to obtain production of Schedule 4.5 prior to the Memorandum Opinion, but he did not exercise "reasonable diligence." Accordingly, Movants are not entitled to relief under Court of Chancery Rule 60(b)(2). *Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.*, 2010 WL 3931097, at \*5 (Del. Ch. Oct. 7, 2010) (denying motion for relief under Court of Chancery Rule 60(b)(2) because the litigant had "ample opportunity" to request production of the allegedly "newly discovered" evidence); *In re U.S. Robotics Corp. S'holders Litig.*, 1999 WL 160154, at \*11–12 (Del. Ch. Mar. 15, 1999) (denying a motion to vacate pursuant to Court of Chancery Rule 60(b)(2) because the purportedly new evidence "could have easily been discovered by class counsel through the discovery process").

### 2. Court of Chancery Rule 60(b)(3)

Under Court of Chancery Rule 60(b)(3), the court may vacate a final judgment "where a party has engaged in fraud or misrepresentation that prevents the moving party from fairly and adequately presenting his or her case." *MCA*, 785 A.2d at 639. "To succeed on a claim under Rule 60(b)(3) . . . , the movant must ordinarily do so by proof of clear and convincing evidence and within a reasonable time after the final judgment has been entered." *In re U.S. Robotics Corp. S'holders Litig.*, 1999

25

WL 160154, at \*12 (Del. Ch. Mar. 15, 1999); *see also MCA*, 785 A.2d at 639 ("A party seeking to vacate an order on the ground that his or her opponent effectuated a fraud on the court bears a heavy burden . . . [and] requires a showing of 'the most egregious conduct involving a corruption of the judicial process itself.'") (quoting Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2870 (3d ed.)).

Movants' arguments under Rules 60(b)(2) and (3) have the same factual basis—alleged failure to produce information that would have revealed the arbitration and that Allied had not paid the entire $250 million cash purchase price when it acquired the Assets. *Compare* Mot. for Relief ¶¶ 31–34, *with id.* ¶ 36. According to Movants, Defendants engaged in fraud by omitting the Arbitration from the Proxy, erroneously stating in the April 2018 8-K that the Arbitration began in 2016, and withholding Schedule 4.5 from Lenois during negotiations on his books-and-records demand. Reply in Support of Mot. for Relief ¶ 21.[45] Movants further argue that Defendants committed a fraud on the court by arguing that Lenois had not adduced evidence that the Director Defendants knew that they were making a false disclosure when they disclosed that Allied paid $250 million to NAE for the Assets in the Proxy. *Id.*

---

[45] In addition to failing to demonstrate fraud by clear and convincing evidence, the Trustee's Rule 60(b)(3) motion fails for the same reasons as his Rule 60(b)(2) motion, because Erin was in possession of Schedule 4.5 and could not have been defrauded by its nondisclosure. *See supra* Part II.A.1.a.

Movants have not established fraud by "clear and convincing evidence" to prevail on the Motion for Relief. *In re U.S. Robotics Corp. S'holders Litig.*, 1999 WL 160154, at *12 (Del. Ch. Mar. 15, 1999). There is no evidence, let alone clear and convincing evidence, that Defendants acted with *scienter* in omitting the Arbitration from the Proxy or by stating that the Arbitration began in 2016 rather than 2013 in the April 2018 8-K. In addition, Movants have not established that Defendants intentionally concealed Schedule 4.5 from Lenois. On the contrary, as discussed above, the record reflects that Lenois did not pursue production of Schedule 4.5 to the Transfer Agreement despite knowing that information relating to litigation between Allied and NAE was contained therein. In that regard, Defendants' failure to disclose potentially inculpatory information to Lenois does not constitute a fraud on the court under these circumstances. *See* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2870 (3d ed.) ("[T]he courts have refused to invoke this concept in cases in which the wrong, if wrong there was, was only between the parties in the case and involved no direct assault on the integrity of the judicial process. Nondisclosure by a party or the party's attorney has not been enough."). There is therefore no basis to grant relief from the dismissal order on the grounds of fraud.

### 3. Court of Chancery Rule 60(b)(6)

Court of Chancery Rule 60(b)(6) provides that the court may issue relief from a final judgment for "any other reason justifying relief from the operation of the judgment." Ct. Ch. R. 60(b)(6).

> Relief under Rule 60(b)(6) is an extraordinary remedy, and the standard under Rule 60(b)(6) is more exacting than any other ground for relief provided for in the Rule. That is, in order for a party to succeed under Rule 60(b)(6), the party must make a showing of [an] extraordinary situation or circumstances.

*Wimbledon Fund LP*, 2011 WL 378827, at *6 (internal citations omitted); *see also Stonewall Ins. Co. v. Nat'l Gypsum Co.*, 1992 WL 51567, at *6 (S.D.N.Y. Mar. 9, 1992) (interpreting analogous Federal Rule of Civil Procedure 60(b)(6) and observing that "[r]elief under Rule 60(b)(6) . . . is properly invoked only where there are extraordinary circumstances justifying relief, when the judgment may work an extreme hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule").

Movants argue that, in addition to the allegedly fraudulent conduct that formed the basis for Movants' request for relief pursuant to Court of Chancery Rule 60(b)(3), Erin's bankruptcy constitutes the "extraordinary" circumstance necessary to justify relief pursuant to Court of Chancery Rule 60(b)(6). Mot. for Relief ¶ 29; Reply in Support of Mot. for Relief ¶¶ 4–5. To that end, Movants' "Justification for Relief" under Rule 60(b)(6) in the Motion for Relief is reduced to a single paragraph:

28

> The challenged Transactions and related misconduct directly contributed to Erin's bankruptcy. Trustee now controls the derivative claims, believes they should be prosecuted, and waives the Rule 23.1-based argument pursuant to which the Court dismissed the claims. None of those facts or circumstances existed or were known at the time of the Opinion. Further, those circumstances could not have been addressed by other procedural means, and due to their existence, "manifest injustice" would occur if relief were not granted.

Mot. for Relief ¶ 29. Thus, the sole basis for relief under Rule 60(b)(6) originates from the transfer of control of the derivative claims from the Company to the Trustee as a result of the bankruptcy.[46]

Erin's bankruptcy is not an extraordinary event requiring relief under Rule 60(b)(6). Movants have cited no authority for the proposition that the mere transfer of the right to assert previously dismissed derivative claims through a bankruptcy trustee warrants relief under Rule 60(b)(6). The relief that the Trustee seeks here would also have broad implications in the bankruptcy context and beyond. The transfer of authority to assert corporate claims also occurs in corporate mergers under 8 *Del. C.* § 259. *Lewis v. Anderson*, 477 A.2d 1040, 1044 (Del. 1984) (holding derivative plaintiff's claim against individual defendants was a "property right" of the corporation that became an asset of the surviving corporation following a

---

[46] Movants have not established that Defendants acted fraudulently or in bad faith so as to warrant relief under Court of Chancery Rule 60(b)(3), which is a separate analysis from the consideration of Rule 60(b)(6). *See Stonewall*, 1992 WL 51567, at *6 (observing that relief under Rule 60(b)(6) is only proper where the "asserted grounds for relief are not recognized" in other clauses of the analogous Federal Rule of Civil Procedure).

29

merger); *see generally* II Edward P. Welch et al., *Folk on the Delaware General Corporation Law* § 259.03, at 9-146 to 147 (6th ed. 2020) (explaining that under Section 259 "the right of action is an asset that passes to the surviving corporation along with the other assets of the constituent corporation"). Similarly, the decision as to whether to assert a corporate claim can change depending upon the makeup of the board. *See, e.g., Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 735 (Del. Ch. 2007) ("The litigation was initiated as a stockholder derivative action but, following a change in control of the board, a special litigation committee of the board of directors chose to realign the corporation as a plaintiff. As a result, with the approval of the court, the company took over control of the litigation."). Thus, granting Movants' Motion for Relief under Rule 60(b)(6) would enable companies to disturb the finality of judgments merely because of a commonplace change in control. This would "result in many final judgments becoming the subject of Rule 60(b) motions to vacate," and therefore the Motion for Relief must be denied. *See* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 2864 (3d ed.) ("Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'"); *TV58 Ltd. P'ship v. Weigel Broad. Co.*, 1994 WL 114809, at *2 (Del. Ch. Mar. 23, 1994) (denying a motion to vacate pursuant to Rule 60(b) because entering the motion would permit frequent challenges to adverse judgments).

30

Movants also overlook that the Company could have sought to realign Erin as the plaintiff prior to the entry of judgment in this action and to pursue claims directly against Defendants in this action or a different action. *See, e.g.*, *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 972–73 (Del. Ch. 2001) (discussing whether a direct claim was barred by statute of limitations after company "convert[ed] the derivative action to a direct action" before the resolution of a motion to dismiss). Erin chose not to do so. Instead, Erin successfully obtained a final judgment in this court preventing Lenois from taking control of and litigating those claims on behalf of the Company in this action.

Furthermore, Movants have not satisfied their burden to establish that granting relief from the Memorandum Opinion is necessary to permit claims by the Company against Defendants. *Nat'l Indus. Grp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 386 (Del. 2013) (holding that Rule 60(b)(6) permits relief under "circumstances that could not have been addressed using other procedural methods, [that] constitute an extreme hardship, or [when] manifest injustice would occur if relief were not granted." (internal quotations omitted)). There is nothing in the Memorandum Opinion that prevents the Trustee from attempting to assert direct claims on behalf

31

of the Company in another action.[47]  Asserting direct claims in a different action would not cause "extreme hardship" or "manifest injustice," especially because the Company always possessed the authority to assert claims against Defendants.[48] Indeed, at oral argument, counsel for Movants noted that the Trustee may not ultimately attempt to assert claims by the Company against Defendants.  *See* Second Oral Arg. Tr. 63 (counsel for Movants arguing that "[w]e don't know what decision will be made by the corporation, but the Chancery Court needs to retain jurisdiction to deal with any issues that may arise depending on the avenue taken by the corporation.").  Granting relief from judgment in this circumstance to permit the Trustee to potentially assert a claim in this action "depending on the avenue taken by the corporation" would exercise an extraordinary power in the service of an inchoate claim.  The Trustee laments that enforcement of the judgment would "squander an asset of the bankruptcy estate and be inequitable to Erin and its

---

[47] Defendants do not contend that the final order in this action would prevent the Company, through the Trustee, from asserting the claims in this action in a separate action.  *See* Second Oral Arg. Tr. 45 ("THE COURT: Is it your argument, Counsel, that the company could not assert these claims through the trustee in a separate action? MR. BANKLER: Certainly not, Your Honor. The trustee has control over the company's estate and could assert whatever claims that it thought was appropriate.").  Defendants argued in their briefing that the Trustee should be judicially estopped from opposing dismissal of Lenois's derivative claims because Erin moved to dismiss Lenois's complaint.  Because the court is denying the Motion for Relief and because Defendants have acknowledged that Erin could assert claims in a different action, this opinion does not address Defendants' judicial estoppel argument.

[48] The parties have not briefed the merits of whether claims asserted by the Trustee in a separate action would be time-barred, and the court expresses no opinion on that issue.

creditors." Mot. for Relief ¶ 5. But nothing in the judgment purports to prevent the Company from pursuing claims against persons who caused the Company to "squander an asset" of the Company or the bankruptcy estate by not timely pursuing the company's claims that Lenois originally sought to pursue over the Company's objection.

Acknowledging that they lack direct legal authority supporting the basis for their Rule 60(b)(6) motion, Movants seek to draw support from the Remand Order. Movants argue that the Remand Order implies that the dismissal of Lenois's complaint for failure to plead demand futility does not preclude the Trustee from advancing direct claims against Defendants in this action. In the court's view, Movants read too much into the Remand Order. Movants contend the Remand Order "strongly supports relief under Rule 60(b)(6) based on Trustee's control over and desire to prosecute the previously-derivative Action." Plaintiff and Trustee's Supplemental Submission ¶ 3. In particular, Movants argue that the Remand Order's citation to *Stotland v. GAF Corp.*, 469 A.2d 421, 423 (Del. 1983), requires vacatur of the Memorandum Opinion under Rule 60(b)(6). *See* Plaintiff and Trustee's Supplemental Submission ¶¶ 3, 17–24; Remand Order ¶ 4 n.2 (holding that the appeal must be dismissed and citing *Stotland*).

I disagree. The Supreme Court's Remand Order reflects an acknowledgement, and Defendants do not contend otherwise, that the Trustee has

33

control over the *claims* previously asserted in the *Lenois* action. The Remand Order did not state that the Trustee can pursue those claims in this action, which is subject to a final judgment. Instead, in my view, the Remand Order left for this court to decide whether Movants could satisfy Rule 60(b) and pursue the previously asserted derivative claims in this action. Indeed, Movants' counsel did not disagree that the Trustee's ability to pursue the claims in this action required Movants to prevail on their Rule 60(b) motion.[49]

The Remand Order's citation to *Stotland* does not compel this court to grant relief under Rule 60(b). In *Stotland*, the stockholder plaintiff's derivative suit was dismissed for failure to plead demand futility. Between the date of the final judgment and the initiation of his appeal, the stockholder made a derivative demand urging the board to pursue the claims that plaintiff had asserted in the derivative action. During the appeal, the board created a special committee to consider the plaintiff's demand. The company moved to dismiss the appeal as moot because the plaintiff conceded that the demand was not excused. In response, the plaintiff took issue with the qualifications and independence of the special committee members. The Supreme Court dismissed the appeal as moot and remanded with specific

---

[49] *See* Second Oral Arg. Tr. 20 ("THE COURT: You have to get past Rule 60(b) in order to take over the claims in this action. Right? MR. TEJTEL: Yes, Your Honor. Yes, Rule 60(b) would need to be -- we would need relief under Rule 60(b) to proceed, most likely.").

instructions to retain jurisdiction until the Special Litigation Committee acted on the stockholder plaintiff's demand.

The Supreme Court in *Stotland*, as in the Remand Order, recognized the company's authority to control company claims that a stockholder previously asserted—but was not permitted to pursue—derivatively. Unlike in *Stotland*, however, the Remand Order did not direct the court to retain jurisdiction and expressly reserved the question of how any claim would proceed for resolution by this court. Remand Order ¶ 5 ("[T]he Trustee's right to proceed will more appropriately be determined by the Court of Chancery in the first instance, in the context of the motions that are pending before that court, including the motion for relief from judgment."). Here, Movants have not established sufficient grounds for relief from judgment under any subsection of Court of Chancery Rule 60(b). Accordingly, the Motion for Relief is denied.

## B. The Trustee's Motion to Substitute

The Trustee has moved pursuant to Court of Chancery Rules 17 and 25(c) to be substituted for Erin as the real party in interest and to be realigned as the plaintiff

in this action.[50]  Court of Chancery Rule 25(c) states that, "in case of any transfer of interest, the action may be continued by or against the original party, unless the Court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."  Ct. Ch. R. 25(c).  The decision of whether to grant a motion to substitute is "committed to the Court's discretion under Court of Chancery Rule 25(c)."  *Stornawaye Capital LLC v. Smithers*, 2010 WL 673291, at *2 (Del. Ch. Feb. 12, 2010); *see also* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1958 (3d ed.) (analyzing the analogous Federal Rule of Civil Procedure and stating:  "An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.").  Substituting a trustee for the debtor-in-possession "is purely a matter of discretion with the Court."  *Schock Bros., Inc. v. Raskin*, 1991 WL 166076, at *2 (Del. Super.

---

[50] Motion to Substitute at 1–2.  The Trustee labels the Motion to Substitute as an amended motion, seeking to amend his July 11, 2019 motion to substitute for Lenois under Court of Chancery Rule 25(c).  *See* Dkt. 145.  In reality, the motion is a new motion to substitute for the Company and realign the Company as plaintiff.  The Trustee first filed the motion in the Supreme Court on March 7, 2017.  *See* No. 482, 2017, Dkt. 50.  The Supreme Court denied the motion.  The Trustee then filed the motion in this court on May 20, 2020, three days after the Supreme Court issued its Remand Order.  Dkt. 145.

July 24, 1991) (citing Super. Ct. Civ. R. 25(c)).[51]  Because substitution under Rule

25(c) is a procedural device that does not ordinarily alter the substantive rights of

the parties, the primary basis for deciding the motion is whether substitution would

"facilitate the conduct of the case."  *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*,

13 F.3d 69, 71 (3d Cir. 1993).  The court's exercise of discretion is "rooted in

considerations of convenience and economy."  *See Comm'ns Imp. Exp., S.A. v.*

*Republic of Congo*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015).

Rule 25(c) substitution would not "facilitate the conduct of the case" because

the Memorandum Opinion is a final judgment that is no longer subject to appeal and

---

[51] The Trustee argues that Court of Chancery Rule 17 compels substitution.  Rule 17 directs that "[e]very action shall be prosecuted in the name of the real party in interest."  Ct. Ch. R. 17(a).  "'Rule 17(a) applies where there has been a transfer of interest prior to commencement of suit, whereas Rule 25(a) applies where there has been a transfer of interest during the pendency of an action.'"  *Stornawaye Capital*, 2010 WL 673291, at *2 (quoting *Schock Bros.*, 1991 WL 166076, at *1); *see also Crocheron v. State Farm Fire and Cas. Co.*, 621 B.R. 659, 665 (E.D. Mich. Sept. 22, 2020) (holding that substitution for a bankruptcy trustee under Federal Rule of Civil Procedure 17 was appropriate when the bankruptcy occurred prior to the commencement of litigation).  Because the Company's interest in this action was transferred to the Trustee after the commencement of the suit, Rule 17 is inapplicable.

the denial of the Motion for Relief brings this action to a close.[52]  The Motion to Substitute is therefore denied.  *Comm'ns Imp. Exp.*, 118 F. Supp. 3d at 231 ("In light of this circumstance and the provision that a Rule 25(c) substitution has no bearing on the substantive rights of the parties, there is no reason to grant [the] motion for substitution.").

## III.   CONCLUSION

For the foregoing reasons, the Motion to Substitute and the Motion for Relief are denied.

IT IS SO ORDERED.

---

[52] Movants contend that "a bankruptcy trustee's substitution in litigation involving the debtor relates back to the original filing date, despite any timeliness concerns."  Reply in Support of the Motion to Substitute ¶ 8 (citing *In re Engelbrecht*, 368 B.R. 898, 902 (M.D. Fla. 2007) & *Solomon v. Buckley*, 86 F.R.D. 464, 467 (E.D. La. 1980)).  After the completion of briefing, the Trustee submitted *Crocheron v. State Farm Fire and Cas. Co.*, 621 B.R. 659 (E.D. Mich. Sept. 22, 2020), explaining that "it addresses whether a court may substitute a trustee for a debtor as the real party-in-interest after the limitations period has run."  Dkt. 156.  In *Crocheron*, the United States District Court for the Eastern District of Michigan permitted a bankruptcy trustee to be substituted for an individual asserting a breach of contract claim against an insurer.  The individual had declared bankruptcy prior to filing the breach of contract claim, and the bankruptcy trustee had mistakenly instructed the individual to sue in her individual capacity.  *Crocheron*, 621 B.R. at 661.  The court in *Crocheron* held that the bankruptcy trustee could be substituted pursuant to Federal Rule of Civil Procedure 17(a) and the substitution was not barred by the statute of limitations.  *Id.* at 665.  *Crocheron* is factually inapposite for numerous reasons, including because it does not involve the substitution and realignment of a trustee in the place of a derivative plaintiff or substitution and realignment after dismissal of a complaint for failure to plead demand futility.  Further, as noted above, the parties have not briefed—and this opinion therefore does not address—whether any pleading by the Trustee in a new action would relate back to Lenois's pleadings in this action.